UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUSSELL LOPES<br>3700 Town Hall Drive<br>Henrico, VA 23231<br><br>    Plaintiff,<br><br>        v.<br><br>WASHINGTON METROPOLITAN<br>TRANSIT AUTHORITY<br>600 5TH Street, NW<br>Washington, DC 20001<br><br>    Defendants. | Civil Action No.:<br><br>**JURY DEMANDED** |

## COMPLAINT

### Introduction

Plaintiff Russell Lopes was a model employee at the Washington Metropolitan Transit Authority ("WMATA"). All was well until he stood up against race discrimination. In response, his supervisor, Donald Doucette, told Lopes that "WMATA is not the place for you" and to find another job. Doucette took further retaliatory action by forcing Lopes out of his office and relocating him to a make-shift desk situated behind a vehicle impact barrier – putting Lopes' physical safety at risk. Lopes appealed to WMATA's Office of Equal Employment Opportunity (OEEO) and its Office of Inspector General (OIG). Neither took any action to help him. Left in physical danger with no recourse, Lopes was constructively discharged. Lopes brings this action to end these practices and to seek compensation for the damages he has suffered as a result, because WMATA cannot be permitted to continue violating the workplace civil rights of its employees with impunity.

**Parties**

1. Plaintiff Russell Lopes ("Lopes" or "Plaintiff") is an adult resident of Henrico, Virginia.

2. Defendant Washington Metropolitan Transit Authority ("WMATA"), created effective February 20, 1967, is an interstate compact agency. By the terms of its enabling legislation, WMATA is an agency and instrumentality of the District of Columbia, the State of Maryland, and the Commonwealth of Virginia. This agency was created to plan, finance, construct and operate a comprehensive mass transit system for the Washington Metropolitan Area. WMATA is a covered employer under Title VII of the Civil Rights Act of 1964, as amended.

**Jurisdiction**

3. This Court's jurisdiction is based upon 28 U.S.C. § 1331 (Federal Question). In addition, this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is appropriate under 28 U.S.C. § 1391(b) and (c) because Defendant is located in this District and does business in this District. WMATA is subject to personal jurisdiction in this District.

5. Lopes has satisfied all prerequisites and conditions precedent necessary to entitle him to seek remedy against Defendant, including filing a Charge of Discrimination at the U.S. Equal Employment Opportunity Commission.

**Facts**

6. Lopes was employed by WMATA from June 2019 through April 2020 as a Bus Maintenance Supervisor, SVMT.

7. During his tenure with WMATA, Lopes was a model employee. WMATA even featured Lopes in its core value video presentation on "Trust." Lopes was also featured in a monthly WMATA newsletter, and was asked to speak at the Quarterly "All Hands" meeting on the subject of "Integrity."

8. By all accounts, things were going well for Lopes at WMATA until he raised concerns about racially derogatory statements made by his supervisor, Superintendent Donald Doucette ("Doucette").

9. Doucette made jokes and remarks about certain individuals, and his comments were becoming progressively offensive. Lopes noticed Doucette was targeting certain ethnic groups of people and expressing cultural prejudicial remarks toward them. On several occasions, Doucette would make racist comments such as: "he's just an angry Black man." Doucette further made derogatory remarks about Hispanic employees "being sneaky as shit," "troublemakers" because they spoke Spanish, and "use the race card as a diversion." Doucette also ridiculed an Ethiopian employee, commenting that doing poor work is how Ethiopians do things in their country. Stated otherwise, when discussing employees of color, Doucette made offensive remarks about their race/national origin.

10. As a man of color, Lopes found it very alarming that Mr. Doucette was comfortable with making these derogatory statements to Lopes and about other WMATA employees.

11. On or about November 26, 2019, Lopes formally opposed Doucette's racially biased statements, which he believed violated both the law and WMATA policies, with WMATA.

12. Lopes made a formal complaint to WMATA's Office of Equal Employment Opportunity (OEEO) and its Office of Inspector General (OIG). Neither department took any steps towards remediating Doucette's racist actions.

13. As a result of Lopes' complaint, Mr. Doucette began telling Lopes to leave WMATA and find a new job. Doucette told Lopes that "maybe WMATA is not the place for you." In addition, Doucette began assigning Lopes additional work responsibilities and forcing him to take on training in areas outside the scope of his position in an attempt to force him to quit.

14. Subsequently, Doucette and his supervisor, Director Kevin Newman, ordered Lopes to take disproportionate disciplinary action against an employee of color without any investigation – which they knew would have violated that employee's rights as a union member and under WMATA's policies and procedures, because Lopes informed them of such at the time. Doucette and Newman did not care, and ordered Lopes to do so anyway.

15. Further, because of Lopes' formal opposition to Doucette's racially biased statements, Doucette and/or others engaged on a retaliatory campaign to drive Lopes from his job at WMATA. Specifically, Doucette and/or others removed Lopes from his shop supervisor office, and ordered Lopes to sit at a dangerous makeshift desk located on the garage floor pinned up against a vehicle impact barrier. See Exhibit A. In other words, because Lopes opposed Doucette's racist activities, he placed Lopes in physical danger. In so doing, Doucette also sent a message to all other WMATA employees of color to not cross him. This, juxtaposed with Doucette's frequent bragging about having a license to carry a firearm, caused Lopes to live in fear on a daily basis, especially as a Black man whose racist white boss was looking to punish him for standing up for minorities' workplace civil rights at WMATA.

16. WMATA turned a blind eye to Doucette's conduct, even while acknowledging his past disciplinary problems. It is no secret at WMATA that Doucette has a history of similar race-related incidents, and a lack of meaningful disciplinary action connected with same, as WMATA simply moved Doucette around the organization.

17. With his safety in danger due to Doucette, coupled with WMATA's failure to address Lopes' complaint, Lopes was left with no choice but to resign in April 2020– a constructive discharge.

18. As a direct and proximate cause of the retaliatory treatment to which he was subjected, Lopes has suffered and continues to suffer significant damages to be proven at trial, including but not limited to lost wages and benefits, emotional distress, and the expenditure of attorneys' fees.

### Claims for Relief

### COUNT I

### Unlawful Retaliation – Title VII (42 USC § 2000e-3)

19. Lopes repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

20. Lopes opposed unlawful activities, and he was subjected to physical danger and emotional harm in response thereto.

21. WMATA manifested this retaliation against Lopes because he opposed discrimination at WMATA.

22. As a result of WMATA's unlawful conduct, Lopes has suffered damages to be determined at trial.

## COUNT II

**Unlawful Termination/Constructive Discharge – Title VII (42 USC § 2000e-3)**

23. Lopes repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

24. Lopes opposed unlawful activities, and Defendant deliberately created intolerable working conditions for Lopes, forcing him to suffer indignity. This rendered Lopes' resignation a constructive discharge.

25. As a result of WMATA's unlawful conduct, Lopes has suffered damages to be determined at trial.

## Jury Request

Lopes respectfully demands a jury trial.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that, and moves this Court to:

(A)  Determine the damages sustained by Plaintiff, including lost wages, emotional distress, together with punitive damages and such prejudgment interest as may be allowed by law;

(B)  Award Plaintiff his costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees;

(C)  Enter a permanent injunction ordering Defendants henceforth to refrain from engaging in the unlawful conduct described in this Complaint and to take all necessary measures to ensure that it is at all times in compliance with such injunction; and,

(D)   Grant Plaintiff such other and further relief as the Court may deem just and proper

                                        The Plaintiff,

                                        Russell Lopes,

                                        By his Counsel,

                                        /s/ Benjamin Flam
                                        Benjamin Flam (Bar No. MA0030)
                                        GORDON LAW GROUP, LLP
                                        585 Boylston Street
                                        Boston, MA 02116
                                        617.536.1800
Dated:  December 30, 2020        bflam@gordonllp.com