UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RUSSELL LOPES,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-cv-03849 (APM) |
| **WASHINGTON METROPOLITAN TRANSIT AUTHORITY,** | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Washington Metropolitan Transit Authority ("WMATA") moves to dismiss Plaintiff Russell Lopes's Complaint alleging unlawful retaliation under Title VII of the Civil Rights Act. Lopes, who was employed at WMATA as a Bus Maintenance Supervisor, alleges that his supervisor retaliated against him for making a formal complaint regarding the supervisor's racists remarks to WMATA's Office of Equal Employment Opportunity ("EEO") and Office of Inspector General. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 1, 12–15. Most notably, Lopes alleges that the supervisor evicted Lopes from his office, ordered him "to sit at a dangerous makeshift desk located on the garage floor pinned up against a vehicle impact barrier," and created such dangerous circumstances for Lopes that ultimately he was forced to resign. *Id.* ¶¶ 15, 17.

WMATA has moved to dismiss the Complaint for failure to state a claim. *See* Def.'s Rule 12(b)(6) Mot. to Dismiss Pl.'s Compl., ECF No. 5 [hereinafter Def.'s Mot.]. For the reasons that follow, WMATA's motion is denied.

The elements of a claim for retaliation are (1) that the plaintiff "opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks omitted). The plaintiff's burden to establish these elements is not onerous, and "[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). That is because "the precise requirements of a prima facie case can vary depending on the context" of a case and "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Accordingly, even if the court is not convinced that "recovery is likely," it frequently will permit a Title VII retaliation case to proceed to discovery. *See McManus v. Kelly*, 246 F. Supp. 3d 103, 112 (D.D.C. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

# II.

WMATA first argues that Lopes has not satisfied his minimal burden because he has not adequately alleged an adverse employment action. Def.'s Mot., Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 5-1 [hereinafter Def.'s Br.], at 4–7. That argument is a steep hill to climb, however, because "[a]dverse actions in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008) (internal quotation marks omitted). Lopes need only allege that the

employer's challenged action "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

On that score, Lopes alleges that he was moved from an enclosed office and forced "to sit at a dangerous makeshift desk located on the garage floor pinned up against a vehicle impact barrier." Compl. ¶ 15. WMATA urges the court to find that Lopes has not established that this improvised setup was actually dangerous, Def.'s Br. at 4–5, but at this stage, that is beside the point. All that matters is that a reasonable employee plausibly could be dissuaded from making or supporting a charge of discrimination due to the change in circumstances. And having viewed photographs of the makeshift "desk" to which Lopes was reassigned, the court finds there is little question that a forced move from an enclosed office to spartan furnishings on an industrial floor could cause a reasonable employee to think twice before reporting. Moreover, the Complaint provides additional reasons that an employee would hesitate to report discrimination: Lopes also alleges that after he reported his supervisor, he was assigned "additional work responsibilities and forc[ed] . . . to take on training in areas outside the scope of his position." Compl. ¶ 13. This allegation plainly satisfies the pleading standard: the D.C. Circuit has held that "[a] reasonable employee might well be dissuaded from filing an EEO complaint if she thought her employer would retaliate by burying her in work." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010). The court therefore finds that Lopes has alleged a materially adverse action sufficient to support his retaliation claim.

## II.

Whether Lopes has sufficiently alleged a constructive discharge claim based on retaliation presents a closer call. "A constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign." *Taylor v.*

*F.D.I.C.*, 132 F.3d 753, 766 (D.C. Cir. 1997) (alteration omitted) (internal quotation marks omitted). A claim of retaliation can support a constructive discharge claim, but the retaliation must make "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015) (internal quotation marks omitted). "The kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination." *Id.* (internal quotation marks omitted).

This is a high bar, but it is plausible that discovery will support a constructive discharge claim here. Drawing all inferences in Lopes's favor, the Complaint alleges that the retaliation that Lopes faced created unsafe working conditions and that his supervisor made thinly veiled threats of termination. First, Lopes has alleged that the mistreatment he faced "placed [him] in physical danger." Compl. ¶ 15. Lopes ultimately will need to support that allegation with additional facts about the dangers he faced, but the allegations he has made—and the photographs attached to his Complaint—indicate that he was relegated to a makeshift desk in a working garage and placed behind a vehicle-impact barrier that was presumably intended to protect him from a potential vehicle impact. *See* Compl., Ex. A, ECF No. 1-1; Compl. ¶ 15. In addition to concerns about his safety in the garage, his supervisor "frequent[ly] brag[ged] about having a license to carry a firearm." Compl. ¶ 15. Discovery may provide additional context for these allegations that would show his supervisor's braggadocio constituted "extreme mistreatment," *Robinson*, 85 F. Supp. 3d at 283. Second, after Lopes reported his supervisor's racist comments, the supervisor told him "maybe WMATA is not the place for you." *See* Compl. ¶ 13 (internal quotation marks omitted). Coupled with the potential threats to Lopes's safety, such "thinly veiled" remarks about termination could support a constructive discharge claim. *Robinson*, 85 F. Supp. 3d at 283

4

(internal quotation marks omitted).  It is therefore plausible that discovery will enable Lopes to establish he faced a risk of physical danger and extreme mistreatment.

### III.

WMATA also argues that the Complaint's retaliation claims must fail because Lopes has not alleged that his supervisor took retaliatory acts *because* Lopes engaged in protected activity.  *See* Def.'s Br. at 10–12.  Specifically, WMATA argues that Lopes cannot rely on the temporal proximity of his protected activity and the alleged retaliatory acts because, based on the lack of detail in the Complaint, such acts could have occurred more than three months after Lopes reported his supervisor.  *See id.* at 11.  The court disagrees.

To begin, as a matter of law, WMATA is wrong that "three months is the outer limit to support an inference of a causal connection between protected activity and an alleged act of retaliation."  *Id*.  It is true that "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," but "neither the Supreme Court nor [the D.C. Circuit] has established a bright-line three-month rule."  *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012); *see also Walker v. Mattis*, 319 F. Supp. 3d 267, 272 (D.D.C. 2018) ("The D.C. Circuit has not adopted a bright-line rule for when temporal proximity cuts off a reasonable inference of causation . . . .").  Instead, the court must "evaluate[] the specific facts of each case to determine whether inferring causation is appropriate." *Hamilton*, 666 F.3d at 1358.  And while an inference of causation arises from proximity only if "the two events are very close in time," the court must also consider evidence that the plaintiff's protected activity extended over a period of time.  *McManus*, 246 F. Supp. at 115–16 (internal quotation marks omitted).

Lopes alleges that he complained of his supervisor's racist comments on November 26, 2019, Compl. ¶ 11, and that he resigned in April 2020, *id.* ¶ 17. That means that at most five months took place between when Lopes first engaged in protected activity and when he claims conditions became so extreme that he was forced to resign. What's more, in his opposition to WMATA's motion to dismiss, Lopes filed a copy of his second complaint to WMATA's EEO, which is dated March 10, 2020. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 9, Ex. 1, ECF No. 9-1, at 1. Not only does this second complaint indicate that Lopes was engaged in a continuing course of protected activity, it also indicates that he was removed from his office on February 18, 2020, and given additional job responsibilities as early as February 5, 2020, just under three months after making his first Complaint. *Id.* at 2. Between this temporal proximity and the evidence that Lopes continued to engage in protected activity as recently as a month before resigning, the court finds a plausible basis to infer that Lopes's supervisor retaliated against him because of his protected activity. *See McManus*, 246 F. Supp. 3d at 115–16; *see also Harris*, 791 F.3d at 69 (finding five-month gap between protected activity and retaliatory acts sufficient to infer causation where other alleged facts supported finding).

## IV.

For the foregoing reasons, WMATA's Motion to Dismiss, ECF No. 5, is denied.

Dated: September 14, 2021

Amit P. Mehta
United States District Court Judge

6